**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ANN STRAWSON,<br><br>Plaintiff,<br><br>v.<br><br>TRANSPORT LABOR CONTRACT/LEASING INC. and METROPOLITAN LIFE INSURANCE COMPANY,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 24 CV 06158<br><br>Judge John J. Tharp, Jr. |

**ORDER**

For the reasons set forth in the Statement below, the defendants' motions to dismiss the amended complaint [41], [43] are granted. The dismissal is with prejudice. Civil case terminated.

**STATEMENT**

This case concerns the alleged denial of life insurance benefits owed to the plaintiff, Ann Strawson, after her husband, William Strawson, passed away. The defendants, Transport Labor Contract/Leasing Inc. ("TLC") and Metropolitan Life Insurance Company ("MetLife"), moved to dismiss the amended complaint on the grounds that under the plain language of Mr. Strawson's benefits plan (the "Plan"), he was no longer covered at the time of his death. This Court agrees with the defendants. Ms. Strawson has provided several theories to explain how Mr. Strawson was still covered, but the controlling terms of Mr. Strawson's plan foreclose her arguments. Ms. Strawson's estoppel and FMLA claims are similarly deficient and cannot revive the terminated policy. The amended complaint must therefore be dismissed.

## I. Background

To resolve the motions to dismiss, the Court will restate the factual allegations of the amended complaint as favorably to Ms. Strawson as possible. *See Kilborn v. Amiridis*, 131 F.4th 550, 554 (7th Cir. 2025). Mr. Strawson was an employee of TLC and was leased to work for Central Illinois Transportation, Inc. ("CIT"). Am. Compl. 2 ¶¶ 8-10, ECF No. 34. Together, TLC and CIT were his joint employers. *Id.* TLC offered its employees a supplemental life insurance policy provided by MetLife. *Id.* at ¶ 12. Mr. Strawson had a $100,000 policy that named his wife as a beneficiary. *Id.*

In March of 2023, Mr. Strawson fell ill. Am. Compl. 2 ¶ 17. No later than April 3, 2023, he had stopped working in order to receive medical treatment.[1] *Id.* at ¶¶ 17, 42. When Mr. Strawson first took time off, the parties expected him to return to work. *Id* at ¶ 17. TLC continued to pay out his vacation days and allowed him to keep a company work truck on his property until it was taken in for service in July 2023. *Id.* at 2-4, ¶¶ 17-28, ECF No. 34. TLC also continued to issue pay stubs to Mr. Strawson and deducted life insurance premiums from his pay until June 2, 2023. *Id.* TLC provided Mr. Strawson with medical, dental, and vision coverage, and he used that coverage to get medical treatment. *Id.*

Unfortunately, Mr. Strawson did not recover, and he died on August 23, 2023. Am. Compl. 4 ¶ 29. After Mr. Strawson's death, TLC sent Ms. Strawson a life insurance claim form and requested a copy of Mr. Strawson's death certificate. *Id.* at ¶ 30. After receiving these documents, TLC submitted them to MetLife. *Id.* at ¶ 33. But on October 19, 2023, TLC sent Ms. Strawson a letter stating that her late husband's benefits were no longer in effect "as of [Mr. Strawson's] date of termination" and providing information on ways to continue the policy. *Id.* at ¶ 34; ECF No. 34-1 PageID 337. Ms. Strawson called TLC's benefits manager, who told her that Mr. Strawson's benefits had terminated on April 3, 2023. Am. Compl. 4 at ¶ 35. The next day, MetLife sent Ms. Strawson a letter denying her claim. *Id.* at ¶ 36. TLC and MetLife also returned the life insurance premiums that had been deducted from Mr. Strawson's paychecks. Am. Compl. 10 ¶ 66. After unsuccessfully appealing her claim to MetLife, Ms. Strawson sued TLC and MetLife to recover the benefits of the life insurance policy, alleging violations of the Employee Retirement Income Security Act of 1974 (ERISA) and the Family and Medical Leave Act of 1993 (FMLA).

Ms. Strawson argues that the Plan contains inconsistent language. One clause of the Plan states that insurance coverage ends on the last day of active employment, while another clause states that coverage continues for three months after the end of active employment at the expense of TLC. She argues that because Mr. Strawson continued to pay life insurance premiums out of his paychecks, his coverage should have continued until June 2, 2023. Coupled with the three-month extension provided by TLC, this should have extended coverage through the date of Mr. Strawson's death. She also argues that the defendants are estopped from denying the claim because the Strawsons had relied upon various representations made by the defendants that suggested that life insurance coverage continued through October 2023. Finally, Ms. Strawson claims that TLC interfered with Mr. Strawson's rights under the FMLA by not providing him with an FMLA eligibility notice.

TLC and MetLife each moved to dismiss, arguing that Mr. Strawson's life insurance coverage ended before his death under the terms of the Plan. Under the defendants' reading, an employee's coverage ends three months after they stop active work, because TLC continues to pay the premiums on the employee's coverage for three months after they stop working. Because Mr. Strawson stopped actively working more than three months before his death, he was not covered at the time of his death, and any alleged representations of the defendants could not modify the terms of the Plan to extend his coverage. TLC also argues that Ms. Strawson's FMLA claim fails

[1] The defendants dispute the exact date Mr. Strawson stopped working. The Court will assume the date is April 3, 2023, the date that is most favorable to the plaintiff.

because she has not pled the required elements of the claim, and in any event the asserted FMLA protections do not apply.

## II. Discussion

To overcome a motion to dismiss, the amended complaint must contain sufficient facts to establish a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering a motion to dismiss, the Court assumes all well-pled facts in the complaint are true and draws all reasonable inferences in the plaintiff's favor. *Kilborn v. Amiridis*, 131 F.4th 550, 554 (7th Cir. 2025). The Court does not, however, accept legal conclusions as true. *Iqbal*, 556 U.S. at 678. Further, when deciding motions to dismiss, the Court can consider exhibits that are attached to the complaint. *See Miller v. Herman*, 600 F.3d 726, 733 (7th Cir. 2010). Ms. Strawson has included as an exhibit a copy of TLC's employee welfare benefit plan (the "Plan"). ECF No. 34-1. The Court will address Ms. Strawson's claims in turn.

### A. Denial of ERISA Plan Benefits

Ms. Strawson sues under Section 502 of ERISA, which authorizes a beneficiary of an employee benefit welfare plan to sue to recover the benefits due to her "under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). A preliminary question is what standard of review to apply to the claim denial. When an ERISA plan's language gives the claims administrator "discretionary authority to determine eligibility for benefits or to construe the terms of the plan," the administrator's determinations will be reviewed under an arbitrary and capricious standard of review, rather than *de novo*. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Hess v. Hartford Life & Acc. Ins. Co.*, 274 F.3d 456, 461 (7th Cir. 2001). Under that standard, "an administrator's decision will not be overturned unless it is 'downright unreasonable.'" *Davis v. Unum Life Ins. Co. of Am.*, 444 F.3d 569, 576 (7th Cir. 2006) (quoting *Sisto v. Ameritech Sickness & Accident Disability Benefit Plan*, 429 F.3d 698, 700 (7th Cir. 2005)). The Plan explicitly empowers MetLife with "discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan." Plan PageID 319-20. Accordingly, MetLife's denial will be reviewed under the more deferential standard. When assessing the reasoning of an administrator, "[i]t is well established that it is the language of an ERISA plan that controls." *Cozzie v. Metro. Life Ins. Co.*, 140 F.3d 1104, 1109 (7th Cir. 1998). The Court therefore begins with the plain language of the Plan.

The Plan's "Date Your Insurance Ends" section provides that supplemental life insurance coverage will end on the earliest of multiple dates, including "the date Your employment ends; Your employment will end if You cease to be Actively at Work in any eligible class, except as stated in the section entitled Continuation Of Insurance With Premium Payment." Plan 45. The Plan defines "Actively at Work or Active Work" to mean "You are performing all of the usual customary duties of Your job on a Full-Time basis. This must be done at: the Policyholder's place of business; an alternate place approved by the Policyholder; or a place to which the Policyholder's business requires You to travel." *Id.* at 38. "Full-Time" work is defined as at least 30 hours a week of Active Work. *Id.* at 39.

The "Continuation of Insurance with Premium Payment" section states:

> The Policyholder has elected to continue insurance by paying premiums for employees who cease Active Work in an eligible class for any of the reasons specified below; for the period You cease Active Work in an eligible class due to injury or sickness, up to 3 months . . . [a]t the end of any of the continuation periods listed above, your insurance will be affected as follows: if You resume Active Work in an eligible class at this time, You will continue to be insured under the Group Policy; if You do not resume Active Work in an eligible class at this time, Your employment will be considered to end and Your insurance will end in accordance with the Date Your Insurance Ends subsection entitled Eligibility Provisions: Insurance for You.

Plan 57. The same section also has a "Family and Medical Leave" clause that states:

> Certain leaves of absence may qualify for continuation of insurance under the Family and Medical Leave Act of 1993 (FMLA), or other legally mandated leave of absence or similar laws. Please contact the Policyholder for information regarding such legally mandated leave of absence laws.

Plan 52.

Reading these clauses together, Mr. Strawson ceased to be "Actively at Work" on April 3, 2023, because that is the date that the amended complaint alleges he stopped going to work due to his illness. He could not have been Actively at Work after that date because he was no longer working more than 30 hours a week at TLC's place of business or traveling to perform work for TLC. His life insurance coverage did not end on that date, however, because TLC had elected to continue insurance for three months for employees who stop working due to sickness. But Mr. Strawson did not return to work at the end of that three-month period, and so his insurance expired by July 2, 2023. This means he was not covered on August 23, 2023. The terms of the plan are not inconsistent; they operate in reference to one another and contemplate a single ending date.

Ms. Strawson argues that the Family and Medical Leave clause somehow extended Mr. Strawson's coverage, but that clause did not independently affect the Plan's coverage. The clause only advises that leaves of absence ***may*** qualify for continuation of insurance if required by law. Ms. Strawson does not claim that Mr. Strawson ever took FMLA leave or any other legally mandated leave of absence, so this clause is inapplicable.[2] Ms. Strawson also mentions portions of the plan that provide options to "port" or "convert" the life insurance policy, but these provisions

---

[2] Ms. Strawson argues that the defendants have conceded that Mr. Strawson was covered because they failed to address the Family and Medical Leave clause in their opening briefs. *See* Plaintiff's Surreply 1, ECF No. 55. Although the defendants did not address this clause, they did not concede the ultimate issue because they provided a competing interpretation of the relevant Plan terms.

do not affect the date that insurance coverage ends, and Ms. Strawson does not allege that Mr. Strawson exercised any of these options. Am. Compl. 6-9 ¶¶49-55. Another provision that potentially provides for coverage if the insured dies within 31 days of the end of life insurance does not apply because Mr. Strawson did not die within this 31-day period. Plan 56.

Ms. Strawson argues that her husband's coverage was extended beyond the timeframe dictated by Plan language because TLC "view[ed] Mr. Strawson as an active employee." Resp. 2, ECF No. 48. For example, she claims that because the company allowed a work truck to remain on Mr. Strawson's property until July 2023, Mr. Strawson was still being "treated . . . as a[n] active employee" and that Mr. Strawson "saw himself as an active employee." *Id.* at 4, 7. But the Plan is governed by objective terms, not by the parties' subjective views or by phrases that are not used in the Plan. The Plan refers to ***Active Work***, and the location of a work truck has no bearing on that definition. Ms. Strawson does not allege that her late husband used the truck in that timeframe to carry out the duties of his job for 30 hours or more a week. Ms. Strawson also claims that because TLC continued to provide medical benefits to Mr. Strawson and deducted life insurance premiums from some of his post-April paychecks (that were later refunded), TLC viewed him as an "active employee." *Id.* at 2-3. Again, these events are not relevant to the Plan's definition of Active Work.

Under the plain language of the Plan, Mr. Strawson's supplemental life insurance coverage terminated prior to his death on August 23, 2023. MetLife's denial of the claim was not arbitrary and capricious, and it therefore stands.

**B. ERISA Estoppel**

Ms. Strawson also sues the defendants under an estoppel theory. She argues that the Strawsons relied on various acts and representations by the defendants that suggested Mr. Strawson was still covered at the time of his death. Because the written language of an ERISA plan ordinarily governs, "statements or conduct by individuals implementing the plan can only estop an employer from enforcing the plan's written terms in 'extreme circumstances.'" *Kannapien v. Quaker Oats Co.*, 507 F.3d 629, 636 (7th Cir. 2007) (quoting *Vallone v. CNA Financial Corp.*, 375 F.3d 623, 639 (7th Cir. 2004)). In the ERISA context, estoppel has four elements: (1) a knowing misrepresentation; (2) made in writing; (3) with reasonable reliance on that misrepresentation by the plaintiff; (4) to her detriment. *Coker v. Trans World Airlines, Inc.*, 165 F.3d 579, 585 (7th Cir. 1999).

The defendants' alleged representations are: (1) continuing to treat Mr. Strawson as an active employee on medical leave; (2) deducting premiums from his paycheck until June 2, 2023; (3) sending paystubs reflecting the premium deductions; (4) representing that there was a three-month period during which insurance would continue at TLC's expense; (5) not notifying the Strawsons that coverage had expired and that he had an individual policy conversion option until October 2023; and (6) giving a notice on October 19, 2023 that life insurance coverage could be continued by electing an individual policy. Am. Compl. 10-11 ¶ 68.

Extreme circumstances have been found in this District where "the facts demonstrated that the claimant was misled by written representations of the insurer or plan administrator into failing to take an action that would have enabled the claimant to receive benefits under the plan." *See Silva v. Fortis Benefits Ins. Co.*, 437 F. Supp. 2d 819, 831 (N.D. Ill. 2006); *Reilly v. Cont'l Cas.*

*Co.*, 2013 WL 12448095, at *5 (N.D. Ill. Dec. 17, 2013). The defendants attribute the premium deductions from Mr. Strawson's paychecks to "clerical errors" or "bureaucratic sloppiness" which is not enough to create extreme circumstances. *See* MetLife Mot. to Dismiss Memorandum 11, ECF No. 42; TLC Mot. to Dismiss Memorandum 9, ECF No. 44. At the motion to dismiss stage, it would be inappropriate to characterize these deductions as clerical errors, since that is a factual question. Nonetheless, the fact that TLC made payroll deductions for roughly two months after Mr. Strawson stopped working does not create an extreme circumstance. *Compare Silva*, 437 F. Supp. 2d at 831 (declining to apply estoppel for two paycheck deductions) *with Metro. Life Ins. Co. v. Sun*, 2013 WL 4759586, at *7 (N.D. Ill. Sept. 4, 2013) (finding extreme circumstances had been alleged when insurer accepted life insurance portability form and charged thousands of dollars in premiums for ported policy over multiple years, only to declare the decedent ineligible to port after he had died).

Nor do these communications satisfy the requirements for estoppel. Many of the representations plainly are not alleged to have been written misrepresentations. Others could not have been relied upon because they were made after Mr. Strawson's death. And no reliance alleged here could be reasonable, because the written details of the plan already explained the duration of coverage. *See Coker*, 165 F.3d at 579 (finding no reasonable reliance on various communications when plaintiff had access to benefits plan materials). "ERISA exists, in part, to protect the financial integrity of pension and welfare plans by confining the payment of benefits to a plan's written terms." *Kannapien*, 507 F.3d at 636. In light of that objective, the Court finds no basis for modifying or departing from the written terms of the plan.

**C. FMLA Interference**

Ms. Strawson also sues TLC for FMLA interference. The amended complaint alleges that TLC failed to provide Mr. Strawson with a notice regarding his eligibility for FMLA leave as required under the law. TLC argues that Ms. Strawson has not adequately pled that the FMLA applied to Mr. Strawson, because she failed to allege that there were 50 or more employees at Mr. Strawson's worksite. *See* TLC Mot. to Dismiss Memorandum at 13-14. Ms. Strawson contends that this factual issue is better resolved at the motion for summary judgment phase. Resp. at 11. The Court need not resolve that question because Ms. Strawson's FMLA claim fails for multiple other reasons.

The FMLA requires certain employers to offer up to12 weeks of unpaid family or medical leave to eligible employees for, among other things, an employee's serious health conditions. 29 U.S.C. § 2612(a)(1)(D). While FMLA leave is unpaid, the employer must continue to provide the employee with coverage under its group health plan as if the employee was working. 29 U.S.C. § 2614(c)(1). Other than health care coverage, employees are not entitled to their employment benefits during leave, though these benefits must be reinstated upon their return to work. 29 C.F.R. § 825.215(d)(2). Significantly, the FMLA expressly does not cover supplemental insurance paid for by an employee's voluntary deductions. 29 C.F.R. § 825.102 ("Employment benefits . . . does not include non-employment related obligations paid by employees through voluntary deductions such as supplemental insurance coverage."). Once an employer learns that an employee's leave from work may be for an FMLA-qualifying reason, the employer must provide the employee with a notice of eligibility to take FMLA leave within five business days. 29 C.F.R. § 825.300.

An employee may bring a cause of action against their employer for denial or interference with their substantive rights under the FMLA. 29 U.S.C. § 2615(a)(1); 29 C.F.R. § 825.220. But the enforcement provision of the FMLA, 29 U.S.C. § 2617, "provides no relief unless the employee has been prejudiced by the violation." *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002). The Seventh Circuit has stated that prejudice can arise from a failure to provide information if the plaintiff would have structured his leave differently had he received the proper information. *See Lutes v. United Trailers, Inc.*, 950 F.3d 359, 368 (7th Cir. 2020).

Here, Ms. Strawson alleges a straightforward violation of the FMLA: TLC failed to give Mr. Strawson the required eligibility notice. But from that simple violation, she alleges a highly attenuated chain of prejudice. Ms. Strawson claims that if TLC had provided Mr. Strawson with an FMLA eligibility notice, he would have investigated the status of his life insurance eligibility and thereafter obtained a personal policy. *See* Resp. 13. Not only is this far too speculative, it is not an allegation that Mr. Strawson was prejudiced, because it has nothing to do with the structure of Mr. Strawson's leave. The amended complaint does not even mention the structure of Mr. Strawson's leave. Ms. Strawson's FMLA claim must be dismissed.

* * *

Ms. Strawson is only entitled to the benefits due to her "under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). For the foregoing reasons, the written terms of the Plan do not allow her to collect Mr. Strawson's life insurance policy, which was no longer in effect at the time of his death. The defendants' motions to dismiss [41], [43] are granted. And as repleading will not cure the flaws in the amended complaint, the dismissal is with prejudice.

Date: October 29, 2026

John J. Tharp, Jr.
United States District Judge